UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CURRIER,

        Plaintiff,                      CIVIL ACTION NO. 04 CV 73963 DT

       v.                              DISTRICT JUDGE BERNARD A. FRIEDMAN

JO ANNE B. BARNHART,         MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Social Security Disability case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated herein, the court recommends that the Commissioner's motion be **GRANTED** and that plaintiff's motion be **DENIED**.

### II. Background

On September 18, 2001, plaintiff filed an application for Social Security Disability Insurance Benefits (DIB), claiming that he was disabled due to disc problems in his back, with a disability onset date of December 27, 2000. (Tr. 16, 42, 57) Following the initial denial of his application by the Social Security Administration (SSA), plaintiff requested a hearing before an administrative law judge (ALJ). (Tr. 30-33, 34) The hearing was held on May 29, 2003. (Tr.

143-58) On June 19, 2003, the ALJ issued a decision denying plaintiff's claim. (Tr. 16-23) The ALJ determined that plaintiff had degenerative disc disease of the lumbar spine and that his impairment was "severe" within the meaning of 20 C.F.R. § 404.1520, but that he did not have an impairment that met or equaled any impairment listed in Appendix 1, Subpart P of the Social Security Regulations. (Tr. 21- 22) The ALJ concluded that plaintiff, notwithstanding his impairments, had the residual functional capacity (RFC) to engage in substantial gainful activity:

> The claimant retains the residual functional capacity to perform a significant range of light work activity that allows for alternating between sitting and standing positions at will. However the claimant should avoid work activity that requires any repetitive bending, twisting, or turning. The claimant should also avoid activity that requires any climbing and the use of foot controls. The above residual functional capacity is also inclusive of the claimant's past work as a security guard.

(Tr. 22) Based on the hearing testimony of a vocational expert (VE), the ALJ concluded that there were a significant number of jobs in the national economy that plaintiff could perform. Id. Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act. Id.

Following the ALJ's denial of his application, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council. (Tr. 9-12) The Appeals Council denied the request on September 8, 2004. (Tr. 4-6) The ALJ's decision thus became the final decision of the Commissioner. On October 8, 2004, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). As noted above, the parties have filed cross-motions for summary judgment. Plaintiff contends in his motion that the ALJ erred in determining that

he was capable of performing his past relevant work as a security guard and in determining that his allegations regarding the extent of his functional limitations were not fully credible. (Tr. 20-22) The Commissioner contends in her motion that the ALJ's decision is supported by substantial evidence and should thus be affirmed.

### III.  Legal Standards

#### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The claimant bears of the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims.  20 C.F.R. § 404.1520.  As discussed in Foster, Id. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment. If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is

substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

### IV.  Analysis

#### A.  Past Relevant Work

Plaintiff, who was 49 years of age when he filed his DIB application, worked as a security guard at an automobile dealership from 1994 until his alleged disability onset date. The ALJ determined that plaintiff had the RFC to perform his past work as a security guard. Plaintiff claims that the ALJ erred in reaching such a conclusion.

The basis for plaintiff's argument is not well articulated in his brief. In any event, even if the ALJ erred as alleged, the error was harmless. In addition to finding that plaintiff could perform his past relevant work as a security guard, the ALJ concluded, based on the hearing testimony of the VE, that plaintiff was capable of performing other light work that exists in significant numbers in the national economy. (Tr. 20-21) Plaintiff has not challenged the ALJ's findings in this regard. Thus, even if the ALJ had determined that plaintiff could not perform his past relevant work as a security guard, a finding of "not disabled" would have been warranted based on the alternative finding that plaintiff could perform other light work.

#### B.  Credibility Determination

Plaintiff testified at the hearing before the ALJ that he last worked in January, 2001, and that his back condition had gotten worse since that date. (Tr. 149) He stated, among other things, that as a result of his back pain, he could only sit or stand for approximately 20 minutes, he had difficulty sleeping at night, he could only walk three-quarters of a block at one time, he

could lift only 15 pounds, and he had difficulty bending, squatting, and negotiating stairs. (Tr. 149-52) Plaintiff further testified that he was capable of driving and that he drove two to three days per week, but that he could drive no further than two to two and one-half miles before he would have to get out of his car and walk around. (Tr. 153) With respect to his daily activities, plaintiff testified that he spent most of the day sitting around his house, that he napped frequently, that his father, with whom he lived, did all of the house work and yard work, and that he did some grocery shopping. (Tr. 150) Plaintiff stated that he was capable of bathing and dressing without assistance and that he was otherwise capable of attending to his personal needs. (Tr. 149)

      The ALJ determined that plaintiff's "allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision." (Tr. 22) The ALJ based his credibility determination on the fact that plaintiff had a limited treatment history, he was not taking any prescribed medicines to alleviate his symptoms, and his testimony and statements regarding his daily activities indicated that he led a "fairly active and independent lifestyle." (Tr. 20) With respect to the latter, the ALJ noted that plaintiff was "able to attend to his own personal care and ... is able to perform some household activities, such as cooking, laundry and providing for the care of his dog. Furthermore, the claimant is reportedly capable of driving a car and taking walks." Id. Plaintiff claims that the ALJ erred in assessing his credibility.

      "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be

supported by substantial evidence." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997). With regard to a claimant's assertions of disabling pain, the Sixth Circuit has established the following two-step test:

> First we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain.

Walters, 127 F.3d at 531.

It is evident from the ALJ's findings he gave at least partial credit to plaintiff's testimony regarding the extent of his pain and functional limitations. The ALJ limited plaintiff to light work and included in his RFC determination several restrictions designed to accommodate plaintiff's back impairment. To the extent that the ALJ declined to accord full credit to plaintiff's testimony, the court cannot say on the record before it that he erred in so doing.

With respect to plaintiff's complaints of pain, there is objective medical evidence in the record demonstrating, as the ALJ found, that plaintiff has a back impairment and that his impairment is "severe" within the meaning of the Social Security regulations. An MRI taken on February 5, 2001, indicated that plaintiff had significant lower lumbar spine spondylosis at the L3-S1 levels, disc herniations at the L4-L5 and L5-S1 levels, and spinal stenosis at the L4-L5 and L5-S1 levels with bilateral neural foraminal encroachment from superimposed degenerative articular facet hypertrophy changes, ligamentum flavum hypertrophy and discogenic degenerative changes. (Tr. 126) Further, X-rays taken on January 1, 2001 showed lumbosacral

discopathy, and X-rays taken on January 10, 2001, showed moderate disc space narrowing at the L5-S1 levels and mild arthritic changes. (Tr. 128-129) Thus, the record establishes the existence of an "underlying medical condition." Walters, 127 F.3d at 531. However, plaintiff points to no objective medical evidence in the record that substantiates the severity of the alleged pain or demonstrates that his back condition is of such severity that it reasonably could be expected to produce disabling pain. Rather, in challenging the ALJ's credibility finding, plaintiff simply relies upon his own subjective statements regarding the extent of his pain and limitations. He does not contend that the ALJ overlooked or failed to give proper consideration to any medical reports or diagnoses. The court finds no evidence in the record that would satisfy the second prong of the pain analysis set forth in Walters.

In addition to the above, plaintiff's testimony regarding the extent of his pain and limitations is inconsistent with other portions of the record. As the ALJ noted, plaintiff indicated that he was fully capable of caring for his own personal needs. Further, while plaintiff testified that he could walk no more than three-quarters of a block before he needed to sit down and that he did no yard work or house work, he indicated in SSA Daily Activity Sheets dated May 6, 2002, and May 4, 2003, that he mowed the grass at his home, did a load of laundry, and washed some dishes. (Tr. 82) These activities are inconsistent with plaintiff's professed inability to walk more than three-quarters of a block at a time and with his contention that he did no yard or house work. In addition, the ability to walk no more than three-quarters of a block at a time would suggest a condition of intense severity. However, the medical evidence in the record does not show a condition of such grave severity. Further, while plaintiff stated in his application for

disability benefits that he first began having back problems on December 26, 2000, there are medical reports in the record indicating that he sought treatment for an identical lower back problem five months prior to that date. (Tr. 106) Plaintiff was employed at the auto dealership at that time and was apparently capable of working notwithstanding his back impairment. Further, the circumstances of plaintiff's departure from the auto dealership cast doubt on his credibility. Plaintiff claimed that he was rendered unable to work as to December 27, 2000, due to his back condition, which he related to a slip and fall that occurred on December 26, 2000, while he was working. However, the record indicates, and plaintiff conceded at oral argument, that he went back to work after December 26, 2000, for three days and that he only stopped working because he was suspended for alleged misuse of dealership property and was then denied reinstatement after he filed a lawsuit over the suspension. (Tr. 130, 147-48) Plaintiff's assertion that he could no longer work as of December 27, 2000, because of his back impairment is dubious in light of this evidence. Finally, plaintiff's testimony is contradicted by the reports of two consulting physicians, both of whom indicated that plaintiff was capable of working with restrictions. (Tr. 108-115, 120-21) There is no evidence in the record that any doctor found plaintiff's condition to be so severe as to preclude all employment.

In light of the deference due the ALJ's credibility determination, the lack of objective medical evidence in the record to support plaintiff's complaints of disabling pain, and the above-noted discrepancies in the record, the court finds that there is substantial evidence in the record to support the ALJ's determination that plaintiff's testimony regarding his pain and limitations was not fully credible.

### **IV.  Conclusion**

The court, having rejected plaintiff's claims of error and having otherwise reviewed the record in its entirely, concludes that there is substantial evidence in the record to support the Commissioner's determination that plaintiff is not disabled.  Accordingly, the court recommends that the Commissioner's motion for summary judgment be **GRANTED** and that plaintiff's motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                      s/Virginia M. Morgan
                                      VIRGINIA M. MORGAN
                                      UNITED STATES MAGISTRATE JUDGE

Dated:   April 15, 2005